UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| HOWARD C. TIMBERLAKE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:04-CV-497 RM |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant | ) | |

OPINION AND ORDER

Howard Timberlake seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 402(e). The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons that follow, the commissioner's decision is affirmed.

Mr. Timberlake applied for disability insurance benefits in February 2002, asserting that he has been disabled since November 1, 2001 as a result of sarcoidosis, panic attacks, chest pain, fatigue, and anxiety. An adminstrative law judge conducted a hearing in August 2003, at which Mr. Timberlake, his mother, Eva Timberlake, and vocational expert Edward Pagella testified.

The ALJ found that Mr. Timberlake had a combination of impairments — sarcoidosis and panic disorder — that were severe but did not preclude all work-related activity. He found that Mr. Timberlake's testimony about the severity of his

symptoms and limitations and his inability to engage in sustained employment were self-serving, unsubstantiated by objective evidence, and not credible. Based on the medical evidence and the vocational expert's testimony, the ALJ determined that Mr. Timberlake retained a residual functional capacity for a restricted range of light work,[1] which precluded performance of his past relevant work as a fork lift operator, but did not preclude all work. The ALJ found from the vocational expert's testimony that there were a significant number of jobs available that Mr. Timberlake could still perform given his physical and mental impairments and his residual functional capacity, including office clerk, cashier, and information clerk. He concluded that Mr. Timberlake was not disabled and was not entitled to a period of disability or disability insurance benefits under sections 216(I) and 223 of the Social Security Act. The Appeals Council denied review, and the ALJ's decision became the agency's final decision. 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). This appeal followed.

The ALJ's decision and Mr. Timberlake's appeal turn on the residual functional capacity assessment. Mr. Timberlake contends that it was error for the ALJ to rely solely on the medical evidence and to discredit and/or disregard his testimony and the testimony and sworn statements of his mother, friends, and family members. Mr. Timberlake also contends that the ALJ erred when he failed

---

[1] The ALJ identified the following limitations or restrictions: only simple repetitive tasks with no overhead lifting or reaching and avoiding exposure to pulmonary irritants, temperature extremes, wetness, and humidity.

2

to apply the psychiatric review technique in determining functional capacity and to consider the combined affect of his impairments.

Judicial review of the Commissioner's final decision is limited. 42 U.S.C. § 405(g); Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993). A court must sustain the ALJ's findings so long as they are supported by substantial evidence. 42 U.S.C. 405(g); Scott v. Barnhart, 297 F.3d 589, 593 (7th Cir. 2002); Schoenfeld v. Apfel, 237 F.3d 788, 792 (7th Cir. 2001). The term "substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A court may not substitute its judgment for that of the ALJ by reconsidering the facts, reweighing the evidence or resolving factual disputes. Scott v. Barnhart, 297 F.3d at 593; Maggard v. Apfel, 167 F.3d 376, 378 (7th Cir, 1999). The reviewing court may not reconsider credibility determinations made by the ALJ unless those determinations are patently wrong. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001); Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

While the ALJ needn't discuss every piece of evidence in the record, Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001), the decision must demonstrate the path of his reasoning, and the evidence must lead logically to his conclusion. Rohan v. Chater, 98 F.3d 966, 971 (7th Cir. 1996). Remand is required if the reviewing court cannot see an "accurate and logical bridge between the evidence and the result." Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996).

At the time of the administrative hearing , Mr. Timberlake was a 43-year-old former fork lift operator with a GED. He testified that he has been unable to work since November 1, 2001because of lung problems, panic attacks that occur two to three times a week, chest pain, and fatigue. He said fumes and dust aggravate his condition, and that his medication helps, with no side effects. Mr. Timberlake stated that he tires easily and must rest five to six hours a day, that he has problems with gripping and grasping due to numbness in his upper extremities, and that he has a fear of getting panic attacks.

Mr. Timberlake's mother, Eva Timberlake, also testified at the hearing. She testified that when Mr. Timberlake has a panic attack, he breaks out into a sweat, is pale and nervous, and "feels like he is dying." Mrs. Timberlake helps during these episodes by telling him to breath slowly. She corroborated Mr. Timberlake's testimony that he had panic attacks two to three times a week.

The medical evidence shows that Mr. Timberlake was diagnosed with lung nodules and mediastinal adenopathy in late 2001. A mediastinoscopy performed in January 2002 by Dr. Mark Ferguson demonstrated noncaseating granulomas consistent with sarcoidosis. Chest x-rays taken in March 2002 showed bilateral hilar lymphadenopathies due to known sarcoidosis. Hospital records noted that the condition was unchanged since the previous study on November 1, 2001, and there was no acute interval abnormality. Progress notes in March 2002 from Mr. Timberlake's treating physician, Dr. Mirza Reheem, indicate that Mr. Timberlake's

4

complaints of chest pain had no known etiology, and that he could return to work if he could avoid dusty, uncontaminated areas.

Dr. M. Korman, an agency physician, examined Mr. Timberlake in May 2002. Mr. Timberlake indicated to Dr. Korman that at times he experienced shortness of breath, uncontrollable coughing, and chest pain. Examination showed Mr. Timberlake to be obese at 222 pounds with a blood pressure of 140/86. He had a steady gait, could walk heel to toe, and could stoop and to squat. Mr. Timberlake had 20/20 vision bilaterally with glasses, and could hear and understand conversational speech. Examination of the chest and heart were normal. Straight leg raising was positive at 80 bilaterally. There was decreased range of motion in the shoulders, elbows, hips and knees, but no sensory deficits. Grip strength was 4/5 bilaterally. A pulmonary function report dated May 23, 2002 showed mild obstructive disease.

Dr. J.V. Corcoran, another agency physician, concluded in a June 2000 physical residual functional capacity assessment that Mr. Timberlake could occasionally lift 20 pounds, could frequently lift 10 pounds, and could stand/walk for about six hours and sit for about six hours in an eight-hour work day. Dr. Corcoran found Mr. Timberlake to be limited in his ability to reach and that he should avoid moderate exposure to extreme temperature, wetness, humidity, noises, and fumes, dust or poor ventilation. A second agency physician, Dr. J. Gaddy, confirmed Dr. Corcoran's assessment in August 2002.

5

Mr. Timberlake's history of panic disorder dates back to 1993. Dr. Raheem indicated in a September 2003 letter that the medication Mr. Timberlake takes for this condition, Klonopin, controls most of his symptoms, though he has breakthrough episodes consisting of palpitations, abdominal cramps, and occasional diarrhea.

At the agency's request, a consulting psychologist, Dr. Judy Hafner, examined Mr. Timberlake in April 2002. Dr. Hafner diagnosed panic disorder without agoraphobia and assigned a Global Assessment of Functioning (GFA) score of 55, indicating moderate symptoms and difficulties or impairments in psychological functioning.

In June 2002, Dr. K. Neville, another state agency psychologist, did an assessment of Mr. Timberlake's panic attacks under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06 for anxiety disorders. He concluded that Mr. Timberlake had mild restrictions in daily living and social functioning, moderate difficulties in concentration, persistence and pace, and no episodes of decompensation, and did not satisfy the "C" criteria of the listing. Dr. Neville opined in a mental residual functional capacity assessment that Mr. Timberlake had moderate limitations in his ability to understand, remember, and carry out detailed instructions, to complete a normal work day and week, to interact appropriately with the public, and to respond appropriately to changes in the work setting. He concluded, however, that Mr. Timberlake retained the capacity to carry out simple, repetitive

6

tasks. A third state agency psychologist, Dr. W. Shipley, affirmed Dr. Neville's assessment in September 2002.

Mr. Timberlake contends that the ALJ improperly rejected his testimony about the severity of his symptoms and limitations merely because it was unsupported by objective medical evidence. The record demonstrates otherwise.

To establish disability based on subjective complaints, a claimant must show:

> 1) evidence of an objectively adduced abnormality and, either 2) objective medical evidence supporting the subjective complaints issuing from that abnormality, or 3) that the abnormality is of a nature in which it is reasonable to conclude that the subjective complaints are a result of that condition.

Veal v. Bowen, 833 F.2d 693, 698 (7th Cir. 1987); *see also* Sparks v. Bowen, 807 F.2d 616, 618 (7th Cir. 1986); 20 C.F.R. 404.1529, 416.929. While the regulations don't "require objective medical evidence to corroborate statements about the intensity, persistence, and functional effects of pain or other symptoms," Pope v. Shalala, 998 F.2d 473, 482 (7th Cir. 1993), neither do they "require a finding of disabled every time a claimant states that she feels unable to work." Id. at 486. The ALJ must evaluate a claimant's subjective complaints in light of all the evidence, including the claimant's work history, the medical evidence, the claimant's testimony and general demeanor, personal observations, and other factors such as the nature, location, onset, duration, frequency, radiation and intensity of any pain, precipitating and aggravating factors; the type, dosage, effectiveness, and adverse effects of any pain medication; treatment for relief of

7

pain; daily activities and functional restrictions. S.S.R. 88-13; Pope v. Shalala, 998 F.2d 473, 485-86 (7th Cir. 1993). The ALJ did just that in this case.

The ALJ found that:

> The claimant asserts that he suffers from fatigue and shortness of breath, and that he has to rest from five to six hours a day. The undersigned notes that there is little discussion in the progress notes regarding fatigue, and certainly no indication that claimant has to rest for such a long period on a daily basis. Claimant testified that he has no side effects from his medication and there is no indication from treating or examining physicians that claimant is limited by fatigue and shortness of breath. I find that claimant's assertions are self-serving in nature and unsubstantiated by objective evidence, and thus, not credible. As to the panic attacks, the record shows claimant's symptoms are relieved by medication, and are not so severe as to cause claimant to seek psychiatric treatment. After careful review of the entire record, the undersigned finds that claimant's allegations of inability to engage in sustained employment is not credible.

The ALJ's credibility determination is supported by the record and therefore is not subject to reconsideration. Zurawski v. Halter, 245 F.3d at 887; Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

Mr. Timberlake next contends that the ALJ ignored an entire line of evidence: the testimony of his mother and affidavits of friends and family members that he submitted more than a month after the hearing was conducted.

"[T]he ALJ need not evaluate in writing every piece of testimony and evidence submitted." Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (citing Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985); Zblewski v. Schweiker, 732 F.2d 75, 79 (7th Cir. 1984)). All that is required is "that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ

8

considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.'" Carlson v. Shalala, 999 F.2d at 181 (quoting Stephens v. Heckler, 766 F.2d at 287); *see also* Books v. Chater, 91 F.3d 972, 979 (7th Cir. 1996).

The ALJ explicitly addressed Mr. Timberlake's testimony concerning his symptoms and limitations. Mrs. Timberlake's testimony was essentially redundant. "This is not like other cases where, because the ALJ failed to consider an entire line of evidence, we concluded that he provided insufficient reasons." Carlson v. Shalala, 999 F.2d at 181. Mrs. Timberlake's testimony served only to corroborate Mr. Timberlake's own testimony. To the extent the ALJ found Mr. Timberlake's testimony to lack credibility, he necessarily found Mrs. Timberlake's supporting testimony similarly not credible. The ALJ did not err by failing to discuss Mrs. Timberlake's testimony specifically.

The affidavits attached to Mr. Timberlake's opening brief and purportedly submitted to the ALJ in October 2003 (more than a month after the hearing) constitute newly discovered evidence. Several avenues were available to Mr. Timberlake for presenting such evidence, *see* Eads v. Secretary of Health and Human Services, 983 F.2d 815, 817 (7th Cir. 1993), but he did not avail himself of any of those methods. Absent a showing of good cause for failing to submit the evidence to the ALJ at the hearing, the court cannot consider the additional evidence and cannot remand for that purpose under 42 U.S.C. § 405(g). *See* Sample v. Shalala, 999 F.2d 1138, 1144 (7th Cir. 1993); Wolfe v. Shalala, 997

9

F.2d 321, 322 n.3 (7th Cir. 1993); Eads v. Secretary, 983 F.2d at 817; Micus v. Bowen, 979 F.2d 602, 606 n.1 (7th Cir. 1992).

Mr. Timberlake acknowledges that the ALJ wasn't required to complete the psychiatric review technique form, but argues nonetheless that he should have applied the technique outlined in 20 C.F.R. 404.1520a(c) and (e)(2) and 416.920a(c) and (e)(2) to the areas of concentration, persistence and pace, and that had the ALJ done so he would have found that the mental limitations were severe and precluded him from performing any type of work on a regular or continuing basis. The record, though, supports the ALJ's assessment of Mr. Timberlake's mental capacity.

Dr. Hafner gave Mr. Timberlake a Global Assessment of Functioning (GFA) score of 55, indicating moderate symptoms and difficulties or impairments in psychological functioning. Dr. Neville assessed Mr. Timberlake's panic attacks under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06 and concluded that he had mild restrictions in daily living and social functioning, moderate difficulties in concentration, persistence and pace, and no episodes of decompensation, and did not satisfy the "C" criteria of the listing. Dr. Neville completed a mental residual functional capacity assessment, on which the ALJ relied, in which he opined that Mr. Timberlake had only moderate limitations in his ability to understand, remember, and carry out detailed instructions, to complete a normal work day and week, to interact appropriately with the public, and to respond appropriately

to changes in the work setting. He concluded, however, that Mr. Timberlake could perform simple, repetitive tasks.

Viewing the record as the court must under the standards governing review, the court finds that the ALJ's decision is supported by substantial evidence in the record as a whole. The Secretary's decision is AFFIRMED.

SO ORDERED.

ENTERED:   March 28, 2006

      /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court